**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JEREMY KRANT, TODD DEATON,
THOMAS NASH, SHANA VACHHANI
and KIMBERLY MILLER, individually and
on behalf of all others similarly situated,

                Plaintiffs,

v.                                      Case No. 2:23-cv-02443

UNITEDLEX CORP.,

                Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR CERTIFICATION OF A SETTLEMENT CLASS AND FOR PRELIMINARY
<u>APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................... i

TABLE OF AUTHORITIES ................................................................................. iv

INTRODUCTION ................................................................................................. 1

SUMMARY OF THE LITIGATION .................................................................... 2

   I.  BACKGROUND ........................................................................................ 2

SUMMARY OF PROPOSED SETTLEMENT AGREEMENT ............................ 4

   II.  THE SETTLEMENT CLASS AND BENEFITS ...................................... 4

      A.  Reimbursement of Out-of-Pocket Expenses ................................. 4

      B.  Reimbursement for Lost Time ........................................................ 6

      C.  Additional Cash Payments .............................................................. 6

      D.  Credit Monitoring and Identity Restoration Services ..................... 7

      E.  Contractual Business Practice Commitments .................................. 7

      F.  Notice and Settlement Administration ............................................ 8

      G.  Service Awards and Attorneys' Fees, Costs, and Expenses .......... 9

      H.  Release of Claims ......................................................................... 10

   III.  THE NAMED PLAINTIFFS HAVE ARTICLE III STANDING .................... 10

   IV.  THE SETTLEMENT CLASS IS LIKELY TO BE CERTIFIED FOR SETTLEMENT PURPOSES ONLY ............................................................. 13

      A.  Numerosity is Satisfied ................................................................ 13

B.  The Key Issues of Law and Fact Are Common to all Settlement Class
    Members .................................................................................................... 14

C.  The Claims of the Class Representatives Are Typical ................................ 15

D.  Plaintiffs Will Fairly and Adequately Protect the Interests of the
    Settlement Class......................................................................................... 15

E.  Common Questions Predominate over Individual Questions..................... 16

F.  A Class Action is Superior to Other Methods............................................ 17

G.  Ascertainability .......................................................................................... 18

V.   THE    SETTLEMENT    IS    WITHIN    THE    RANGE    OF    FAIR,
     REASONABLE,    AND    ADEQUATE    AND    SHOULD    BE
     PRELIMINARILY APPROVED ....................................................................... 19

A.  The Settlement Was Reached as a Result of Arm's Length Negotiations
    Assisted by an Experienced Mediator........................................................ 21

B.  The Settlement Is Excellent Considering the Costs, Risks, and Delay of
    Trial and Appeal......................................................................................... 21

C.  The Method for Distributing Relief Supports Preliminary Approval ........ 24

D.  The Terms of the Proposed Attorneys' Fee Award Support Preliminary
    Approval ..................................................................................................... 24

E.  Class Members Are Treated Equitably ...................................................... 25

F.  The Settlement Is Fair and Reasonable...................................................... 25

VI.  THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO
     THE CLASS ARE APPROPRIATE .................................................................. 26

A.  The Court Should Preliminarily Approve the Proposed Notice of
    Settlement ................................................................................................... 26

B.  Appointment of KCC to Serve as the Settlement Administrator Is Proper
    .................................................................................................................... 26

C.  Proposed Schedule of Settlement Events ...................................................... 27

CONCLUSION ......................................................................................................... 27

CERTIFICATE OF SERVICE ................................................................................... 29

# TABLE OF AUTHORITIES

## Cases

*Agan v. Katzman & Korr, P.A.*,
    222 F.R.D. 692 (S.D. Fla. 2004) ........................................... 18

*Am. Med. Ass'n v. United Healthcare Corp.*,
    2009 WL 1437819 (S.D.N.Y. May 19, 2009) ....................... 20

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997) .............................................................. 17

*Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*,
    568 U.S. 455 (2013) .............................................................. 16

*Anderson v. Coca-Cola Bottlers' Ass'n*,
    2023 WL 3159471 (D. Kan. Apr. 28, 2023) ................... 19, 20

*Bohnak v. Marsh & McLennan Companies,* Inc.,
    79 F.4th 276 (2d Cir. 2023) ................................................. 12

*C.C. v. Med-Data Inc.*,
    2022 WL 970862 (D. Kan. Mar. 31, 2022) ........................... 22

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981) ................................................................ 20

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
    2020 WL 3288059 (D. Kan. June 18, 2020) ................... 21, 25

*Clemens v. ExecuPharm Inc.*,
    48 F.4th 146 (3d Cir. 2022) ................................................. 12

*Coe v. Cross-Lines Ret. Ctr., Inc.*,
    No. 22-2047-EFM, 2023 WL 3664921 (D. Kan. May 24, 2023) ......................................... 13

*Corra v. ACTS Ret. Servs., Inc.*,
    2024 WL 22075 (E.D. Pa. Jan. 2, 2024) .............................. 16

*DG ex rel. Stricklin v. Devaughn*,
    594 F.3d 1188 (10th Cir. 2010) ........................................... 15

*Hapka v. CareCentrix, Inc.*,
    2018 WL 1871449 (D. Kan. Feb. 15, 2018) .................. passim

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
    2019 WL 3183651 (D. Md. July 15, 2019) .......................... 23

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ............................................................ 16, 22, 23

*In re Citrix Data Breach Litig.*,
  2021 WL 2410651 (S.D. Fla. June 11, 2021) .................................................. 23

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*,
  2021 WL 5369798 (D. Kan. Nov. 17, 2021) ................................................... 21

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust
  Litig.*, 2020 WL 1180550 (D. Kan. Mar. 10, 2020) ................................... 15, 18

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  999 F.3d 1247 (11th Cir. 2021) ............................................................... 12, 16

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ............................................. 14, 23

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  293 F.R.D. 21 (D. Me. 2013) ....................................................................... 22

*In re Molycorp., Inc. Sec. Litig.*,
  2017 WL 4333997 (D. Colo. Feb. 15, 2017) ................................................. 21

*In re Motor Fuel Temperature Sales Practices Litig.*,
  258 F.R.D. 671 (D. Kan. 2009)........................................................ 13, 14, 19, 20

*In re Motor Fuel Temperature Sales Practices Litig.*,
  292 F.R.D. 652 (D. Kan. 2013).................................................................... 15

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  2019 WL 3410382 (D. Or. July 29, 2019) ..................................................... 23

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
  2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ............................................. 22

*In re Syngenta AG MIR 162 Corn. Litig.*,
  2018 WL 1726345 (D. Kan. Apr. 10, 2018).................................................. 22

*In re Syngenta AG MIR 162 Corn Litig.*,
  No. 14-md-2591, 2016 WL 5371856 (D. Kan. Sept. 26, 2016) ......................... 18

*In re Target Corp. Customer Data Security Breach Litig.*,
  2015 WL 7253765 (D. Minn. Nov. 17, 2015)................................................ 22

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
  2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ............................................... 17

*Kansas Nat. Res. Coal. v. United States Dep't of Interior*,
    971 F.3d 1222 (10th Cir. 2020) ...................................................................... 10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................ 10

*Marcus v. Kansas Dep't of Revenue*,
    209 F. Supp. 2d 1179 (D. Kan. 2002) ......................................................... 21, 25

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ........................................................................ 19

*O'Dowd v. Anthem, Inc.*,
    2019 WL 4279123 (D. Colo. Sept. 9, 2019) ................................................. 25

*Ogden v. Figgins*,
    315 F.R.D. 670 (D. Kan. 2016) .................................................................... 13

*Sears v. Atchison Topeka & Santa Fe Ry. Co.*,
    749 F.2d 1451 (10th Cir. 1984) .................................................................... 19

*Sikes v. Teleline, Inc.*,
    281 F.3d 1350 (11th Cir. 2002) .................................................................... 18

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................................ 10

*Trevizo v. Adams*,
    455 F.3d 1155 (10th Cir. 2006) .................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................ 14

**Statutes**

28 U.S.C. § 1715(b) ............................................................................................ 27

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... 13

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................ 26

Fed. R. Civ. P. 23(e)(1)(B)(ii) ........................................................................... 13

Fed. R. Civ. P. 23(e)(2)(D) ................................................................................ 25

Fed. R. Civ. P. 23(a)(1) ..................................................................................... 13

Fed. R. Civ. P. 23(a)(2) ................................................................................................ 14

Fed. R. Civ. P. 23(a)(3) ................................................................................................ 15

Fed. R. Civ. P. 23(a)(4) ................................................................................................ 15

Fed. R. Civ. P. 23(b)(3) ............................................................................ 13, 16, 18, 26

Fed. R. Civ. P. 23(e) ............................................................................................. 19, 27

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................................... 26

Fed. R. Civ. P. 23(e)(2) ......................................................................................... 20, 21

Fed. R. Civ. P. 23(g)(3) ............................................................................................... 27

## INTRODUCTION

Settlement Class Representatives Adam Behrendt, Allison Glusky, Jeremy Krant, Todd Deaton, Thomas Nash, Shana Vachhani,[1] and Kimberly Miller, individually and on behalf of all others similarly situated, (collectively "Plaintiffs"), request that the Court preliminarily approve a proposed class settlement reached in this action arising from a March 2023 data breach involving Defendant UnitedLex Corp. ("ULX" or "Defendant"), and thus direct the issuance of notice to putative class members in accordance with the Settlement Agreement dated June 21, 2024, submitted with Plaintiffs' Motion as Exhibit A ("Settlement Agreement" or "Settlement").[2] Plaintiffs allege that on March 2, 2024, cybercriminals obtained unauthorized access to ULX's servers and exfiltrated the personal information of approximately 7,588 current and former employees and contractors of ULX, as well as in some cases their beneficiaries and dependents (the "Data Breach"). The personal information potentially accessed included names, Social Security numbers, financial information used for payroll, and benefits information ("PII").

Under the terms of the Settlement Agreement, ULX will establish a non-reversionary cash settlement fund of $1,300,000.00 that will be used to pay for (1) reimbursement of class members' documented out-of-pocket costs fairly traceable to the Data Breach, up to $15,000 per individual; (2) reimbursement of class members' time spent remedying issues related to the Data Breach, up to 20 hours at $25 per hour (up to $500 per individual); (3) notice and administration costs; (4) attorneys' fees, expenses, and service awards approved by the Court; and (5) *pro-rata* distributions

---

[1] Ms. Vachhani unfortunately passed away during the pendency of this lawsuit. Counsel for Plaintiffs are working to contact Ms. Vachhani's estate to ensure that any payments approved for Ms. Vachhani under the Settlement will be properly issued to her estate.

[2] In support of their motion, Plaintiffs also submit the Declaration of J. Austin Moore on behalf of Proposed Class Counsel ("Moore Decl.") as Exhibit B to Plaintiffs' Motion; and the Declaration of Carla Peak on behalf of KCC Class Action Services, LLC in support of the Settlement Notice Plan ("KCC Decl.") as Exhibit C to Plaintiff's Motion.

of all remaining cash to participating settlement class members. ULX will separately pay for Credit Monitoring and Identity Restoration Services, which will be offered to all settlement class members who elect to enroll through July 11, 2027. ULX has also agreed to implement and maintain certain business practice commitments relating to its information security program that are subject to judicial enforcement. As detailed herein, the Settlement represents an excellent result for the Settlement Class—particularly considering the risks of continued litigation—and readily satisfies the applicable preliminary approval standard of likely to be approved as fair, reasonable, and adequate.

Accordingly, Plaintiffs respectfully move the Court for an Order: (1) finding it will likely be able to approve the proposed Settlement in this matter as fair, reasonable, and adequate and certify the Settlement Class for purposes of entering judgment on the Settlement under Federal Rule of Civil Procedure 23(e); (2) appointing Norman E. Siegel and J. Austin Moore of Stueve Siegel Hanson LLP, Bryce Bell of Bell Law, LLC, Tyler W. Hudson of Wagstaff & Cartmell, LLP, Manuel S. Hiraldo of Hiraldo P.A., and Rachel Dapeer of Dapeer Law, P.A. ("Proposed Class Counsel") as Interim Class Counsel pursuant to Rule 23(g)(3); (3) approving the proposed Notice plan and directing that Notice be issued to the Settlement Class; (4) appointing KCC as the Settlement Administrator; and (5) entering settlement related deadlines including a date for the Final Approval Hearing.

## SUMMARY OF THE LITIGATION

## I.    BACKGROUND

On May 24, 2023, Adam Behrendt filed a putative class action against ULX in the Circuit Court of Jackson County, Missouri relating to a data breach disclosed by ULX on or about July 11, 2023, that included the personal information of current and former employees and contractors of ULX, as well as in some cases their beneficiaries and dependents. On June 20, 2023, ULX

removed the action to the U.S. District Court for the Western District of Missouri. ULX thereafter successfully sought transfer to the U.S. District Court for the District of Kansas. *See* Moore Decl., ¶ 2.

On September 1, 2023, Mr. Behrendt voluntarily dismissed his action without prejudice. On July 18, 2023, Allison Glusky filed a putative class action against ULX in the Circuit Court of Broward County, Florida. On August 10, 2023, ULX removed the action to the U.S. District Court for the Southern District of Florida. ULX thereafter successfully sought transfer to the U.S. District Court for the District of Kansas. On October 13, 2023, Ms. Glusky voluntarily dismissed her action without prejudice. Moore Decl., ¶ 3.

On September 29, 2023, Jeremy Krant, Todd Deaton, Thomas Nash, Shana Vachhani, and Kimberly Miller filed a putative class action against ULX in the U.S. District Court for the District of Kansas relating to the Data Breach. *See* Doc. 1. On December 11, 2023, ULX filed an unopposed motion for a 30-day extension to file a responsive pleading so the Parties could explore the possibility of early mediation. *See* Doc. 9. Thereafter, the Parties negotiated the terms of a mediation, which included ULX's commitment to producing documents and information necessary for Class Counsel to fully understand the underlying facts and scope of the putative class. Moore Decl., ¶ 4.

On January 11, 2024, the Parties submitted a joint motion to temporarily stay proceedings to participate in a mediation before the Hon. Diane Welsh (Ret.) on March 26, 2024. *See* Doc. 11. The Court granted the motion on January 12, 2024. *See* Doc. 12. In advance of formal mediation, the Parties exchanged relevant discovery regarding the nature of the breach, number of class members impacted, and additional information relevant to the Data Breach. The Parties also

exchanged detailed mediation briefs with their respective positions on the merits of the claims and class certification. Moore Decl., ¶ 5.

Following extensive arm's length settlement negotiations conducted through Judge Welsh that included an all-day mediation session on March 26, 2024, the Parties executed a binding term sheet setting forth the essential terms of settlement. On April 10, 2024, the Parties filed a joint status report informing the Court that the Parties have reached an agreement on the material terms of settlement. *See* Doc. 13. The parties thereafter negotiated the Settlement Agreement that is now being presented for the Court's consideration. Moore Decl., ¶ 6.

<u>**SUMMARY OF PROPOSED SETTLEMENT AGREEMENT**</u>

The terms of the Parties' proposed Settlement Agreement are as follows:

## II.     THE SETTLEMENT CLASS AND BENEFITS

The Settlement will provide benefits to the 7,588 individuals identified on the Settlement Class List, which includes all U.S. residents whose PII was compromised as a result of the Data Breach. Excluded from the Settlement Class is ULX, its representatives and any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff. *See* Agreement, ¶ 45. Under the terms of the Settlement, ULX will fund a non-reversionary cash settlement fund in the amount of $1,300,000. Agreement, ¶¶ 45, 65-66; Moore Decl. ¶ 7. The Settlement Fund will be used to pay for the following benefits to the Settlement Class:

### A.     Reimbursement of Out-of-Pocket Expenses

The first component of the Settlement is reimbursement of out-of-pocket expenses and unreimbursed charges fairly traceable to the Data Breach up to $15,000 per individual ("Out-of-Pocket Expenses"). *See* Agreement, ¶ 71. Proposed Class Counsel believe that the $15,000 individual cap will be sufficient to cover all potential losses or expenses incurred as a result of the Data Breach. Moore Decl., ¶ 8. When a victim incurs out-of-pocket expenses relating to a data

breach, the expenses are typically associated with seeking advice about how to address the incident (*e.g.*, paying for professional services), paying incidental costs associated with identity theft or fraud (*e.g.*, overdraft fees or costs for sending documents by certified mail), or taking mitigative measures like paying for credit monitoring or credit freezes. *Id*. As such, the out-of-pocket expenses associated with a data breach are generally relatively modest, and rarely exceed several hundred dollars. *Id.* When victims spend more than this amount, it is typically due to professional services such as those provided by an accountant, attorney, or credit repair specialist. Thus, the high individual cap will ensure that even individuals who suffered outlier losses will be eligible to participate in the Settlement. *Id*.

Likewise, the "fairly traceable" is designed to allow class members to be compensated for a broad range of harm likely to flow from the Data Breach. Examples of Out-of-Pocket Expenses that are eligible for reimbursement through the Settlement include:

- Out-of-pocket costs, expenses, losses, or other charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of a Settlement Class Member's PII;

- Out-of-pocket costs incurred after the Data Breach was disclosed associated with changing accounts or engaging in other mitigative conduct, such costs may include notary, fax, postage, copying, mileage, and long-distance telephone charges;

- Out-of-pocket professional fees incurred to address the Data Breach; and

- Out-of-pocket purchases of credit monitoring or other mitigative services after the Data Breach was disclosed, through the date of the Settlement Class Member's Claim submission.

*See* Claim Form, Agreement, Ex. 2; *see also* Moore Decl., ¶ 9.

The documentation necessary to establish Out-of-Pocket Expenses is not overly burdensome and can consist of documents such as receipts from third parties, highlighted account statements, phone bills, gas receipts, and postage receipts, among other relevant documentation.

5

*See* Agreement, ¶ 71; Moore Decl., ¶ 9. If the claim is rejected for any reason, there is also a consumer-friendly process whereby claimants will have the opportunity to cure any deficiencies in their submission if the Settlement Administrator determines a claim for Out-of-Pocket Expenses is deficient in whole or part. Agreement, ¶ 76; Moore Decl., ¶ 9.

### B.    Reimbursement for Lost Time

The settlement fund will also be used to reimburse settlement class members who spent time addressing issues related to the Data Breach for up to twenty (20) hours at twenty-five dollars ($25) per hour, totaling $500.00 per individual ("Lost Time"). Settlement Class Members can receive reimbursement for Lost Time by including on the claim form a brief description of the actions taken in response to the Data Breach and the time associated with each action. *See* Agreement, ¶ 73; Moore Decl., ¶ 10. This is an important benefit as Settlement Class Members can receive payment for having to take time out of their busy lives to address issues stemming from the Data Breach. Likewise, this claims procedure is subject to the consumer-friendly process, providing claimants with the opportunity to correct any deficiencies in their submission. *See* Agreement, ¶ 76; Moore Decl., ¶ 10.

### C.    Additional Cash Payments

To ensure that all money in the Settlement Fund will directly benefit Settlement Class Members, any money remaining after payments are issued for Out-of-Pocket Expenses, Lost Time, Notice and Administration Expenses and Attorneys' Fees and Service Awards will be distributed *pro rata* among participating settlement class members. Settlement Class Members are informed in the Notice and on the Claim Form that additional cash payments are not guaranteed and the amount of these payments, if any, will depend on the number of individuals who submit valid claims. Agreement, ¶ 75; Moore Decl., ¶ 11.

### D.    Credit Monitoring and Identity Restoration Services

Separate and apart from the Settlement Fund, ULX will pay for Credit Monitoring and Identity Restoration Services which will be offered to all Settlement Class Members who elect to enroll through July 11, 2027. Agreement, ¶ 77; Moore Decl., ¶ 12. Credit monitoring is a service that monitors an individual's credit reports and alerts the individual when any change is made that could signal fraudulent activity. Moore Decl., ¶ 12. Credit changes can include new credit card or loan applications, new credit inquiries, existing account changes, and new public records or address changes, among others. *Id.* Credit monitoring gives the individual the opportunity to confirm the accuracy of a credit change in real time and, if necessary, address the issue before fraud occurs or expands. *Id.* The Credit Monitoring and Identity Restoration Services will be offered through Kroll and include single-bureau credit monitoring, unlimited access to consultation with fraud resolution specialists, and access to identity theft resolution services whereby individuals can access a licensed investigator to assist with addressing identity theft issues. The Credit Monitoring and Identity Restoration Services are available to all class members regardless of whether they submit a claim for Out-of-Pocket Losses or Lost Time. Agreement, ¶ 77; Moore Decl., ¶ 12.

### E.    Contractual Business Practice Commitments

In addition to the monetary compensation provided to class members by the Settlement, ULX has agreed to implement and maintain certain business practice commitments relating to its information security program from the effective date of Settlement through July 11, 2027, including providing proof of relevant security certifications, which are subject to Court enforcement. Agreement, ¶¶ 88-90; Moore Decl., ¶ 13. These commitments will be paid for by ULX separate and apart from the Settlement Fund and include continuing an enhanced cybersecurity training and awareness program, enhanced data security policies, enhanced security

measures, such as implementation of network and application upgrades consistent with industry standards, further restricting personnel with access to sensitive information, and enhanced monitoring and response capability. Agreement, ¶¶ 88-90; Moore Decl., ¶ 13.

**F.    Notice and Settlement Administration**

Following a competitive bidding process, the parties have selected KCC to serve as the Settlement Administrator and Notice Provider tasked with providing notice and processing claims. Moore Decl., ¶ 14. KCC is a nationally recognized class action notice and administration firm that has experience administering data breach settlements. *See id.*; *see also generally* KCC Decl. Under the terms of the Settlement ULX will provide the Settlement Class List to the Settlement Administrator within 14 days of the Preliminary Approval order. Thereafter, the Settlement Administrator will disseminate Notice to the members of the Settlement Class via U.S. mail to all Settlement Class members and also via e-mail to Settlement Class Members whose e-mail addresses are known. Moore Decl., ¶ 14; KCC Decl., ¶¶ 13-17. Proposed Class Counsel may direct the Settlement Administrator to send reminder e-mail notices to Settlement Class Members at any time prior to the Claims Deadline. Thus, the Notice Plan proposed for this case is the "gold standard" as it incorporates multiple forms of direct notice plus reminder notices and is the best notice practicable under the circumstances. KCC Decl., ¶ 25.

The approximate cost of notice and administration is $61,000, which will be paid from the Settlement Fund. Moore Decl., ¶ 14; KCC Decl., ¶ 26.

KCC will also establish a Settlement Website in the form agreed to by the parties and the Court. Moore Decl., ¶ 15; KCC Decl., ¶ 19. In addition to the notices, the website will include information about the Settlement, related case documents, and the Settlement Agreement. Class members can submit claims electronically on the Settlement Website or by mail. Agreement, ¶ 84; Moore Decl., ¶ 15. The documentation necessary to establish Out-of-Pocket Losses can be

8

uploaded through the Settlement Website or mailed in paper form. Moore Decl., ¶ 15. The Claim Form provides examples of documentation that can establish various types of losses. *See* Claim Form, Ex. 2 to Settlement Agreement. Class members who elect to enroll in Credit Monitoring Services will receive an activation code by mail or e-mail within 30 days of the Effective Date. Agreement, ¶ 77.

The proposed class notice meets the standards of Rule 23(c)(2)(B). *See* Moore Decl., ¶ 16; Class Notice, Ex. 1 to Settlement Agreement. The notice uses plain English in an easy-to-read format that concisely explains to class members the nature of the case and their options under the Settlement. It includes information such as the case caption, a description of the Class, a description of the claims and the history of the litigation, a description of the Settlement and the claims being released, the names of Proposed Class Counsel, a statement of the maximum amount of attorneys' fees that will be sought by Proposed Class Counsel, the maximum amount Proposed Class Counsel will seek for a service award at the final approval hearing, a description of the procedures and deadlines for requesting exclusion and objecting to the Settlement, the URL to access the Settlement Website containing relevant case documents, and the manner in which to obtain further information. Moore Decl., ¶ 16.

G.    **Service Awards and Attorneys' Fees, Costs, and Expenses**

The Settlement Fund will be used to pay for an award of attorneys' fees and expenses and service award payments as approved by the Court. Proposed Class Counsel will move for an attorneys' fee award not to exceed one-third (33.33%) of the settlement fund plus reimbursement of costs and expenses not to exceed $30,000. Agreement, ¶ 110; Moore Decl., ¶ 17. Proposed Class Counsel will also move for a service award payment for each of the Settlement Class Representatives not to exceed $2,500 for their time and effort in pursuing litigation on behalf of the Class. Agreement, ¶ 108; Moore Decl., ¶ 17. Settlement Class Representatives' approval of

the Settlement is not conditioned in any manner on their receiving a service award or its amount. Proposed Class Counsel will file the motion for attorneys' fees, expenses, and a service award payment no later than 21 days before the opt-out and objection deadlines. Agreement, ¶¶ 108, 110; Moore Decl., ¶ 17.

### H.     Release of Claims

In exchange for the benefits provided under the Settlement, Class Members will release any legal claims that may arise from or relate to the facts and claims alleged in the Complaint filed in this litigation, as specified in Section XIII of the Settlement Agreement. Agreement, ¶¶ 105-107; Moore Decl., ¶ 18.

## III.    THE NAMED PLAINTIFFS HAVE ARTICLE III STANDING

"A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Kansas Nat. Res. Coal. v. United States Dep't of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020) (quoting *Lujan*, 504 U.S. at 561). To have standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *See TransUnion*, 594 U.S. at 423. When assessing whether a harm is concrete, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id*. at 424. That includes "tangible harms" such as "monetary harms" as well as "[v]arious intangible harms" such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id*. at 425.

Here, Plaintiffs plead facts sufficient to give rise to Article III standing encompassing both tangible and intangible harms. Indeed, each of the named plaintiffs alleged their information including their full names, Social Security numbers, and financial information used for payroll and benefits was exfiltrated by hackers and thereafter released on an underground portion of the internet known as the dark web, where anyone with an internet browser can access and misuse it at their discretion. *See* Doc. 1, Complaint, ¶¶ 1-4. Additionally, each named plaintiff alleges that he or she suffered identity theft or fraud as a result of the Data Breach. *See* Compl., ¶¶ 98-106 (Plaintiff Krant suffered tax fraud and took steps to address it); ¶¶ 107-115 (Plaintiff Deaton had an unauthorized financial account opened using his personal information); ¶¶ 116-124 (Plaintiff Nash suffered tax fraud); ¶¶ 125-134 (Plaintiff Vachhani suffered tax fraud and took steps to address it); ¶¶ 135-143 (Plaintiff Miller suffered tax fraud and took steps to address it).

Courts have recognized that even in cases where not *every* victim has suffered identity theft or fraud, the fact that *some* victims have experienced such harm supports the notion that other victims face an imminent risk of experiencing similar harm. As held by the Eleventh Circuit in addressing this issue in the context of the Equifax data breach settlement:

> Given the colossal amount of sensitive data stolen, including Social Security numbers, names, and dates of birth, and the unequivocal damage that can be done with this type of data, we have no hesitation in holding that Plaintiffs adequately alleged that they face a "material" and "substantial" risk of identity theft that satisfies the concreteness and actual-or-imminent elements. . . . The actual identity theft already suffered by some Plaintiffs further demonstrates the risk of identity theft all Plaintiffs face—though actual identity theft is by no means required when there is a sufficient risk of identity theft. Here, dozens of Plaintiffs allege they have already had their identities stolen and thus suffered injuries in many different ways.
> \*\*\*
> As such, the allegations of some Plaintiffs that they have suffered injuries resulting from <u>actual</u> identity theft support the sufficiency of all Plaintiffs' allegations that they face a <u>risk</u> of identity theft. . . . Beyond the sufficient risk of identity theft and resulting injuries, a vast number of Plaintiffs who have not yet suffered identity theft also allege they have spent time, money, and effort mitigating the risk of identity theft. Their efforts include purchasing credit freezes, monitoring their

financial accounts, and purchasing credit monitoring, among other things. As explained above, because the risk of harm here is a sufficient injury, the allegations of mitigation injuries made by these Plaintiffs are also sufficient. . . . Plaintiffs have easily shown an injury in fact.

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262–63 (11th Cir. 2021) (emphasis in original)

Other appellate courts have recognized that the release of information on the dark web alone gives rise to an injury-in-fact under *TransUnion*. *See, e.g., Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 157 (3d Cir. 2022) ("Because we can reasonably assume that many of those who visit the Dark Web, and especially those who seek out and access [the hacking group's] posts, do so with nefarious intent, it follows that [plaintiff] faces a substantial risk of identity theft or fraud by virtue of her personal information being made available on underground websites."). Indeed, because data exposure has a close relationship to privacy torts recognized at common law, courts have had little trouble finding Article III injury under *TransUnion* even where the plaintiff has not yet experienced fraud. *See Bohnak v. Marsh & McLennan Companies,* Inc., 79 F.4th 276, 287 (2d Cir. 2023) ("given the close relationship between [plaintiff's] data exposure injury and the common law analog of public disclosure of private facts, and, alternatively, based on her allegations that she suffered concrete present harms due to the increased risk that she will in the future fall victim to identity theft as a result of the data breach, we conclude that [plaintiff] has alleged an injury that is sufficiently concrete to constitute an injury in fact for purposes of her damages claim.").

Here, the named Plaintiffs each allege they had highly sensitive information stolen, disclosed on underground websites, suffered identity theft and fraud, and then took steps mitigating the harm. Plaintiffs thus easily allege facts supporting Article III injury.

12

## IV.   THE SETTLEMENT CLASS IS LIKELY TO BE CERTIFIED FOR SETTLEMENT PURPOSES ONLY

"The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement." Fed. R. Civ. P. 23 Advisory Committee Notes to 2018 amendments. However, for purposes of deciding whether to disseminate notice, the court must find that it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). As discussed below, courts have repeatedly certified settlement classes of data breach victims. Here, the certification requirements of Rule 23(a), Rule 23(b)(3), and the implied ascertainability requirement are satisfied. Accordingly, preliminary certification of the Settlement Class for settlement purposes only is appropriate.

### A.   Numerosity is Satisfied

Rule 23(a)(1) is satisfied where "the class is so numerous that joinder of all members is impracticable." *Id*. "To satisfy this requirement, plaintiffs must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 678-79 (D. Kan. 2009); *see also Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). Courts in this District recognize that "a good faith estimate of at least 50 members is a sufficient size to maintain a class action." *Coe v. Cross-Lines Ret. Ctr., Inc.*, No. 22-2047-EFM, 2023 WL 3664921, at *3–4 (D. Kan. May 24, 2023) (quoting *Ogden v. Figgins*, 315 F.R.D. 670, 673–74 (D. Kan. 2016) (finding numerosity satisfied for a class including "at least 40 people")). Here, ULX identified approximately 7,588 individuals affected by the Data Breach. In addition to the sheer number of individuals in the Settlement Class, certifying a class is also superior to joinder because the low-dollar amount of the likely claims, along with other barriers to a potential recovery would make it difficult and inefficient for individuals to sue separately. Numerosity is thus easily satisfied.

**B.      The Key Issues of Law and Fact Are Common to all Settlement Class Members**

Rule 23(a)(2)'s commonality requirement mandates the existence of "a common contention" that is "capable of classwide resolution," the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23(a)(2) does not require plaintiffs to demonstrate that class members' claims are identical. Rather, this "inquiry requires the Court to find only whether common questions of law or fact exist." *Motor Fuel*, 258 F.R.D. at 679. "[E]ven a single common question" is sufficient. *Id.* at 359. Here, the Settlement Class Members' claims share a common factual core, as they each suffered the same alleged injury—theft of their personal data in the Data Breach. As alleged by Plaintiffs, the critical issues posed by this action include: (1) whether and to what extent ULX had a duty to protect and safeguard the PII of Plaintiffs and class members from access to their PII by unauthorized third parties; (2) whether ULX breached that duty by failing to implement and maintain data security procedures and practices commensurate with the nature and scope of the PII compromised in the Data Breach; and (3) whether Plaintiffs and the Settlement Class were injured as a result of the Data Breach.

Many courts "have previously addressed [the commonality] requirement in the context of data breach class actions and found it readily satisfied." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *11-12 (N.D. Ga. Mar. 17, 2020) (noting "[a]ll members of the class suffered the same alleged injury, exposure of their data in the Equifax data breach, stemming from the same conduct and the same event. The class members are asserting the same or substantially similar legal claims."); *see also Hapka v. CareCentrix, Inc*., 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding commonality satisfied in context of a data breach settlement). The commonality requirement is, thus, satisfied.

C.      **The Claims of the Class Representatives Are Typical**

Rule 23(a)(3) requires that the representative parties' claims or defenses are typical of those of the class. For the typicality requirement to be satisfied, "the named plaintiffs' interests and claims 'need not be identical' to those of the putative class members." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2020 WL 1180550, at *14 (D. Kan. Mar. 10, 2020) (quoting *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010)). "As long as the claims of the named plaintiff and class members 'are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality.'" *Id.* (quoting *Devaughn*, 594 at 1198–99). Here, Settlement Class Representatives are former employees or spouses of ULX employees who were victims of the Data Breach and suffered identity theft or fraud as a result of the Data Breach. Their litigation goals precisely align with those of the Settlement Class Members, as their claims arise from the same Data Breach and involve the same tort and contract theories as all other Settlement Class Members. *See Hapka*, 2018 WL 1871449, at *2 ("Plaintiff satisfies the typicality requirement because her claim arises from the same factual nexus and is based on the same legal theories as the claims of members of the Settlement Class.). The typicality requirement is readily satisfied.

D.      **Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class**

Rule 23(a)(4) requires the plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement asks whether the named plaintiffs and counsel (a) 'have any conflicts of interest with other class members' and (b) will prosecute the action vigorously on behalf of the class." *In re EpiPen*, 2020 WL 1180550, at *19 (quoting *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 671 (D. Kan. 2013)). No such conflict of interest exists or will arise in this case, as the Class

Representative and the proposed Settlement Class Members allege that they all had their personal information compromised through the same Data Breach and all seek to remedy similar injuries. *See, e.g., In re Equifax*, 999 F.3d at 1276 (11th Cir. 2021) (adequacy in data breach case satisfied as plaintiffs' claims "arise out of the same unifying event . . . seek redress for the same injury . . . and seek compensation for injuries associated with the risk of identity theft"); *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 309-10 (N.D. Cal. 2018) (adequacy satisfied as "all Settlement Class Members are victims of the same event" and "seek the same relief: compensation for the harms already incurred as a result of the breach and protection against the use of their personal information going forward"). Further, as explained further below, Plaintiffs retained counsel who are highly experienced in class action and data breach litigation. *See Corra v. ACTS Ret. Servs., Inc*., 2024 WL 22075, at *4 (E.D. Pa. Jan. 2, 2024) (adequacy met where class counsel "have litigated and settled numerous class actions, including data breach class actions."). The adequacy requirement is thus satisfied.

### E.     Common Questions Predominate over Individual Questions

Predominance is satisfied if "questions of law or fact common to class members predominate over any questions affecting only individual members." Rule 23(b)(3); *see Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013). "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459 (emphasis in original).

Here, the key predominating questions are whether ULX had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of Plaintiffs and the Settlement Class and whether ULX breached that duty. The many common questions of fact and law that arise from ULX's conduct predominate over any individualized issues. Other courts have recognized that these types of common issues arising from a data breach predominate over individualized issues.

16

*See, e.g., In re Anthem*, 327 F.R.D. at 312-315 (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over "potential individual issues based on state-law variations"); *Hapka*, 2018 WL 1871449, at *2 (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the [breach] and CareCentrix's alleged conduct predominate over any individualized issues"); *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach). Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Accordingly, the common questions of fact and law that arise from ULX's conduct predominate over any individualized issues.

### F.    A Class Action is Superior to Other Methods

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. To determine if superiority requirements are met for certification of a settlement class, courts consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members;

and (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. *See* Fed. R. Civ. P. 23(b)(3). At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004) (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

Proceeding as a class action in this case is superior to other means of adjudication. There is no indication in this case that any class member wishes to litigate their claims individually, and there are no other cases that have been filed. And with the high cost of litigating a case like this— requiring expert investigation and testimony to prove how and why the data breach occurred— almost certainly swamping individual damages, individualized litigation is impracticable.

As noted by this Court in *Hapka*: "Here, potential damages suffered by individual class members are relatively low-dollar amounts and may be uneconomical to pursue on an individual basis given the burden and expense of prosecuting individual claims. Moreover, there is little doubt that resolving all class members' claims jointly, particularly through a class-wide settlement negotiated on their behalf by counsel well-versed in class action litigation, is superior to a series of individual lawsuits and promotes judicial economy." *Hapka*, 2018 WL 1871449, at *3. The same is true in this case. The Court respectfully should certify the Settlement Class, as the superiority requirement, along with all other requirements Rule 23(a) and (b), is satisfied.

## G.    Ascertainability

The Tenth Circuit has not specifically addressed "whether ascertainability is a separate requirement under Rule 23(b)(3)." *In re EpiPen*, 2020 WL 1180550, at *10. But this Court has analyzed the issue and predicted that the Tenth Circuit would adopt a version of ascertainability that requires that a class definition "not be too vague, the class must not be defined by subjective criteria, and the class must not be defined in terms of success on the merits." *Id.* at *11 (quoting

18

*In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591, 2016 WL 5371856, at *2–3 (D. Kan. Sept. 26, 2016) (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)). Here, the Settlement Class is ascertainable and includes the 7,588 individuals who ULX identified as potential victims of the Data Breach and who received notice of the Data Breach. The class is thus ascertainable, and the Court should preliminarily certify the Settlement Class for settlement purposes only.

## V.    THE SETTLEMENT IS WITHIN THE RANGE OF FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE PRELIMINARILY APPROVED

Settlement is strongly favored as a method of resolving disputes. This is particularly true in class actions such as the present action. *Sears v. Atchison Topeka & Santa Fe Ry. Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984). Under Rule 23(e), review of a proposed class action settlement is a two-step process. *Motor Fuel*, 258 F.R.D. at 675. At preliminary approval, the Court analyzes whether there is any reason not to proceed with the proposed settlement and notify the class. After the Court preliminarily approves the settlement, the class is notified and provided an opportunity to be heard at the final approval hearing. At the final approval hearing, the Court considers the merits of the settlement to decide if it should be finally approved. *Id.* As Judge Lungstrom recently reaffirmed in *Anderson v. Coca-Cola Bottlers' Ass'n*, courts apply the following standard of review at the preliminary approval stage:

> Because preliminary approval is just the first step of the approval process, courts apply a less stringent standard than that at final approval. District courts have developed a jurisprudence whereby they undertake *some* review of the settlement at preliminary approval, but perhaps just enough to ensure that sending notice to the class is not a complete waste of time. The general rule is that a court will grant preliminary approval where the proposed settlement is neither illegal nor collusive and is within the range of possible approval. While the Court will consider the Tenth Circuit's factors in depth at the final approval hearing, they are a useful guide at the preliminary approval stage as well.

2023 WL 3159471, at *2 (D. Kan. Apr. 28, 2023) (collecting authorities) (italics in original).

Plaintiffs request the Court to take the first step in this two-step process. "The Court will ordinarily grant preliminary approval where the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *Motor Fuel*, 258 F.R.D. at 675 (quoting *Am. Med. Ass'n v. United Healthcare Corp.*, 2009 WL 1437819, at *3 (S.D.N.Y. May 19, 2009)). "Although the Court must assess the strength of plaintiffs' claims, it should not decide the merits of the case or resolve unsettled legal questions." *Id.* (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 (1981)).

Rule 23(e)(2), as amended in 2018, dictates that at the final approval stage, courts should consider whether: (1) "the class representatives and class counsel have adequately represented the class"; (2) "the proposed settlement was negotiated at arm's length"; (3) "the proposed settlement treats class members equitably relative to each other"; and (4) "the relief provided for the class is adequate taking into account (i) the costs, risks, and delay of trial and appeal[,] (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims[,] and (iii) the terms of any proposed award of attorney's fees, including timing of payment." *Id.*

These factors largely overlap with the following factors considered by courts in this Circuit prior to the 2018 amendments "whether (1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable." *Anderson*, 2023 WL 3159471, at *2 (collecting authorities). Courts in this District consider the Rule 23(e)(2) factors as "the main tool in evaluating the propriety of [a] settlement," while also addressing the Tenth

Circuit's factors. *Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).

This proposed Settlement satisfies each of the Rule 23(e)(2) and Tenth Circuit factors. Accordingly, Plaintiffs request that the Court grant preliminary approval of the Settlement.

### A.    The Settlement Was Reached as a Result of Arm's Length Negotiations Assisted by an Experienced Mediator

The Settlement was reached by experienced counsel through months of arm's length negotiations assisted by the Hon. Diane M. Welsh (Ret.), a former U.S. Magistrate Judge who has successfully mediated some of the largest data breach cases in history. Prior to mediating, the parties exchanged documents and information that provided Plaintiffs with sufficient evidence and knowledge of the claims at issue to make informed decisions regarding the strengths and weaknesses of Plaintiffs' claims. This factor weighs in favor of preliminary approval. *See, e.g.*, *Marcus v. Kansas Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) (finding this factor satisfied where the settlement was reached "by experienced counsel for the class"); *In re Molycorp., Inc. Sec. Litig.*, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017), *report and recommendation adopted*, 2017 WL 4333998 (D. Colo. Mar. 6, 2017) ("Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved.").

### B.    The Settlement Is Excellent Considering the Costs, Risks, and Delay of Trial and Appeal

Balancing the risks of continued litigation, the benefits of the Settlement, and the immediacy and certainty of the significant recovery provided for by the Settlement supports that the Settlement should be preliminarily approved. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2021 WL 5369798, at *2 (D. Kan. Nov. 17, 2021)

(quoting *In re Syngenta AG MIR 162 Corn. Litig.*, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018) (recognizing that the "immediate recovery is more valuable than 'the mere possibility' that Class Members might achieve a more favorable outcome 'after protracted and expensive litigation' that may well last 'many years in the future'")).

As recognized by other courts, data breach cases are especially risky, expensive, and complex given the unsettled nature of the law. *See, e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."); *In re Anthem*, 327 F.R.D. at 315 (noting that "many of the legal issues presented in data-breach cases are novel") (cleaned up).

The risk involved is highlighted by the fact that historically data breach cases have faced substantial hurdles even in making it past the pleading stage. *See C.C. v. Med-Data Inc.*, 2022 WL 970862, at *10 (D. Kan. Mar. 31, 2022) (Crabtree, J.) (dismissing data breach claims for lack of Article III injury). Class certification has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Because the "legal issues involved [in data breach litigation] are cutting-edge and unsettled … many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Security Breach Litig.*, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

Through the Settlement, Plaintiffs and Class members gain significant benefits without having to face further risk. A relatively early settlement is especially warranted in the data breach context because class members benefit *immediately* from protections like credit monitoring and identity restoration services that can help detect and prevent identity theft and fraud early and assist class members in addressing any issues that arise. At trial, there is a possibility that only class

22

members who already experienced damages in the form of monetary losses would be able to recover. By contrast, this Settlement provides benefits to the *entire* class, including reimbursement for lost time, additional cash payments, credit monitoring, and business practice commitments that might not otherwise be available remedies at trial.

Further, the relief made available under this Settlement compares very favorably to the relief made available to victims of large data breaches in common fund cases that recently received approval as it provides for a significantly greater recovery on a per-person basis. *See, e.g., In re Equifax Inc.*, 2020 WL 256132, at *2 (N.D. Ga. Mar. 17, 2020) (describing settlement benefits made available from $380.5 million fund on behalf of 147 million class members); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 WL 3410382, at *23-24 (D. Or. July 29, 2019) (describing settlement benefits made available from $32 million fund on behalf of 11 million class members); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (approving $115 million settlement on behalf of more than 79 million class members). The settlement relief also compares favorably to the relief offered in smaller, comparably-sized cases. *See, e.g., Hapka*, 2018 WL 1871449, at *3 (D. Kan. Feb. 15, 2018) (approving claims made settlement of minimum $200 payment to class members with tax fraud or up to $5,000 per individual with documentation of losses on behalf of 2,000 class members); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 2019 WL 3183651, at *7 (D. Md. July 15, 2019) (approving non-reversionary $3.25 million settlement on behalf of 61,000 class members); *In re Citrix Data Breach Litig.*, 2021 WL 2410651 (S.D. Fla. June 11, 2021) (approving non-reversionary settlement fund of $2.275 million on behalf of class 24,316 members); *see also* Moore Decl., ¶ 21.

This factor favors preliminary approval of the Settlement.

**C.      The Method for Distributing Relief Supports Preliminary Approval**

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

The Notice Program and Claim Form were designed to encourage the filing of valid claims by Settlement Class Members. All Settlement Class Members will be mailed (and e-mailed where known) direct notice of the Settlement. Where even required, documentation requirements are not onerous, and there is a consumer-friendly dispute process if a claim is denied in whole or part. This favors preliminary approval of the Settlement.

**D.      The Terms of the Proposed Attorneys' Fee Award Support Preliminary Approval**

Rule 23(e)(2)(C)(iii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment." The terms of the proposed attorneys' fee award are consistent with class action best practices. The amount of any attorneys' fee award is intended to be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Agreement, ¶ 110. The Settlement is not contingent on the amount of any fee award, and the attorneys' fee award shall be paid from the Settlement Fund no later than 14 days following the Effective Date of the Settlement. *Id*. The Settlement provides that Plaintiffs intend to seek an attorneys' fee award of up one-third of the $1,300,000 settlement and costs and expenses not to exceed $30,000. The Notice advises Settlement Class Members of these amounts. Consistent with Rule 23(h), pursuant to the proposed schedule set forth below, Plaintiffs' Motion for Final Approval of the Settlement and Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Class Representative Service Awards shall be filed no later than 21 days prior to the deadline for Settlement Class Members to object to Plaintiffs' attorneys' fee request.

These provisions further support preliminary approval.

### E.      Class Members Are Treated Equitably

The proposed Agreement treats all Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members will have the same opportunity to seek reimbursement for Out-of-Pocket Expenses and Lost Time, which means that monetary compensation will be apportioned in accordance with each Settlement Class Member's Claim. Additionally, all Settlement Class Members are eligible for additional cash payments to be split *pro rata*, regardless of what other relief they seek under the Settlement. Moore Decl., ¶ 25. Because all Settlement Class Members are treated alike, this requirement is satisfied.

### F.      The Settlement Is Fair and Reasonable

The final, additional factor courts in the Tenth Circuit consider is "the judgment of the parties that the settlement is fair and reasonable." *Chavez Rodriguez*, 2020 WL 3288059 at *2. Courts recognize that the recommendation of a settlement by experienced counsel is entitled to great weight. *O'Dowd v. Anthem, Inc.*, 2019 WL 4279123, at * 14 (D. Colo. Sept. 9, 2019); *Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *5 (D. Kan. Feb. 15, 2018); *Marcus v. Kansas Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight").

Proposed Class Counsel are experienced data breach class action practitioners and agreed to settle this case after sufficient discovery, investigation, and months of negotiations assisted by a respected mediator. *See* Moore Dec., ¶¶ 19-21. In particular, members of Proposed Class Counsel have helped negotiate the three largest data breach settlements in history and have successfully litigated (and resolved) scores of other smaller data breach cases over the past decade. On a per class member basis, the relief made available here meets or exceeds that made available in each of those settlements. Moore Dec., ¶¶ 21-23. Thus, Proposed Class Counsel believe the Settlement

represents an excellent result for the Settlement Class and is fair, reasonable, and adequate. *See id.*

Plaintiffs respectfully submit the Settlement should be preliminarily approved.

## VI.   THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE

### A.   The Court Should Preliminarily Approve the Proposed Notice of Settlement

Under Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal." Likewise, in directing notice "to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The proposed Class Notice (Exhibit 1 to the Settlement Agreement) readily meets these requirements, and the notice program, using multiple modes of direct delivery (via U.S. mail and e-mail where known), constitutes the best practicable notice under the circumstances of this case. The Notice uses "plain English" to inform class members of, among other things, the nature of the class claims, the essential terms of the settlement, the date, time and place of the Final Approval Hearing, how to object or opt-out of the settlement, and the binding effect of the settlement on class members. The Notice also contains information regarding Proposed Class Counsel's request for fees and expenses, and the proposed service awards to the class representatives. Thus, the notice satisfies the specific requirements of Federal Rule of Civil Procedure 23(c)(2)(B), sufficiently informs class members of the terms of the proposed settlement and their available options and is the best notice that is practicable under the circumstances.

### B.   Appointment of KCC to Serve as the Settlement Administrator Is Proper

Plaintiffs request that the Court appoint KCC to serve as the Settlement Administrator, which includes providing notice of the settlement and administering the claims process and

distribution of the Net Settlement Fund. KCC is a highly experienced and well-qualified class action administrator. *See generally* KCC Declaration.

### C.     Proposed Schedule of Settlement Events

If the Court grants preliminary approval of the Settlement, Plaintiffs respectfully propose the following schedule:

| | |
|---|---|
| Defendant provides CAFA notice required by 28 U.S.C. § 1715(b) | Within 10 days after the filing of Plaintiff's Motion for Preliminary Approval |
| Deadline for Defendant to Provide Settlement Class List to KCC | 14 days after entry of Preliminary Approval Order |
| Notice Deadline | 21 days after entry of Preliminary Approval Order |
| Motion for Attorneys' Fees and Expenses and Service Awards | 21 days prior to Objection and Opt-Out/ Exclusion Deadline |
| Opt-Out/ Exclusion Deadline | 40 days after Notice Deadline |
| Objection Deadline | 40 days after Notice Deadline |
| Claims Deadline | 90 days after Notice Deadline |
| Final Approval Brief and Response to Objections Due | At least 14 days prior to Final Approval Hearing |
| Final Approval Hearing | No earlier than 90 days after Notice Deadline |

### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully move the Court for an Order: (1) finding it will likely be able to approve the proposed Settlement in this matter as fair, reasonable, and adequate and certify the Settlement Class for purposes of entering judgment on the Settlement under Federal Rule of Civil Procedure 23(e); (2) appointing Proposed Class Counsel as Interim Class Counsel pursuant to Rule 23(g)(3); (3) approving the proposed Notice plan and directing that Notice be issued to the Settlement Class; (4) appointing KCC as the Settlement Administrator; and (5) entering settlement related deadlines including a date for the Final Approval Hearing.

Dated: June 24, 2024                    Respectfully submitted,

                                        /s/ *J. Austin Moore*
                                        Norman E. Siegel (D. Kan. No. 70354)
                                        J. Austin Moore (D. Kan. No. 78557)
                                        **STUEVE SIEGEL HANSON LLP**
                                        460 Nichols Road, Suite 200
                                        Kansas City, Missouri 64112
                                        Tel: 816-714-7100
                                        siegel@stuevesiegel.com
                                        moore@stuevesiegel.com

                                        Bryce B. Bell  KS # 20866
                                        **BELL LAW, LLC**
                                        2600 Grand Blvd., Suite 580
                                        Kansas City, Missouri 64108
                                        Tel: 816-886-8206
                                        Bryce@BellLawKC.com

                                        Tyler W. Hudson        KS#20293
                                        **WAGSTAFF & CARTMELL**
                                        4740 Grand Avenue, Suite 300
                                        Kansas City, MO 64112
                                        816-701-1100
                                        F: 816-531-2372
                                        thudson@wcllp.com

                                        Manuel S. Hiraldo (*pro hac vice*)
                                        **HIRALDO P.A.**
                                        401 E. Las Olas Blvd., Ste. 1400
                                        Fort Lauderdale, FL 33301
                                        mhiraldo@hiraldolaw.com

                                        Rachel Dapeer (*pro hac vice*)
                                        **DAPEER LAW P.A.**
                                        20900 NE 30th Avenue, Suite 417
                                        Aventura, FL 33180
                                        rachel@dapeer.com

                                        *Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 24, 2024, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

By:     /s/ *J. Austin Moore*
        J. Austin Moore
        *Attorney for Plaintiffs*