## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JEREMY KRANT, TODD DEATON,
THOMAS NASH, SHANA VACHHANI
and KIMBERLY MILLER, individually and
on behalf of all others similarly situated,

                Plaintiffs,

v.

UNITEDLEX CORP.,

                Defendant.

Case No. 2:23-cv-02443

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................................iii

INTRODUCTION ..........................................................................................................1

SUMMARY OF THE LITIGATION ...............................................................................2

I.      BACKGROUND ..................................................................................................2

SUMMARY OF PROPOSED SETTLEMENT AGREEMENT.........................................3

I.      THE SETTLEMENT CLASS AND BENEFITS .................................................3

      A.     Reimbursement of Out-of-Pocket Expenses..........................................3

      B.     Reimbursement for Lost Time .................................................................4

      C.     *Pro Rata* Payments.................................................................................4

      D.     Credit Monitoring and Identity Restoration Services .............................4

      E.     Contractual Business Practice Commitments ..........................................5

      F.     Service Awards and Attorneys' Fees, Costs, and Expenses ....................5

      G.     Release of Claims ...................................................................................5

II.     Preliminary approval and administration of notice...........................................6

III.    THE REACTION OF THE CLASS HAS BEEN FAVORABLE.......................7

IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLMENT.............8

      A.     The Class Representative and Class Counsel Have Provided Excellent Representation to the Class......................................................................10

      B.     The Settlement was Negotiated at Arm's Length ..................................10

      C.     The Relief Provided for the Class is Fair, Reasonable, and Adequate...................11

            1.     The costs, risks, and delay of trial and appeal; .........................11

            2.     The effectiveness of any proposed method of distributing relief to the class.................................................................................12

            3.     The terms of the proposed award of attorneys' fees, expenses and service awards ...............................................................12

    4. The Settling Parties Have No Additional Agreement ............................... 13

  D. The Settlement Treats Class Members Equitably Relative to Each Other ............ 13

  E. The Settlement Satisfies the Remaining Tenth Circuit Factor ............................ 13

V. CLASS CERTIFICATION REMAINS APPROPRIATE ................................................. 14

VI. THE COURT SHOULD DESIGNATE CLASS COUNSEL ......................................... 15

CONCLUSION ................................................................................................................................. 15

CERTIFICATE OF SERVICE ....................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prod., Inc. v. Windsor,*
    521 U.S. 591 (1997).................................................................................. 10

*Beasley v. TTEC Service Corp.,*
    2024 WL 170411 (D. Colo. Feb. 21, 2024) ............................................... 8

*Chavez Rodriguez v. Hermes Landscaping, Inc.,*
    2020 WL 3288059 (D. Kan. June 18, 2020) ...................................... 9, 14

*Ferrington v. McAfee, Inc.,*
    2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) ............................................. 7

*Forcellati v. Hyland's, Inc.,*
    2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ............................................. 7

*In re Anthem, Inc. Data Breach Litig.,*
    327 F.R.D. 299 (N.D. Cal. 2018) .............................................................. 8

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.,*
    2021 WL 5369798 (D. Kan. Nov. 17, 2021)............................................11

*In re Syngenta AG MIR 162 Corn. Litig.,*
    2018 WL 1726345 (D. Kan. Apr. 10, 2018)............................................11

*In re Wawa, Inc. Data Sec. Litig.,*
    2024 WL 1557366 (E.D. Pa. Apr. 9, 2024)................................................ 8

*In Re: C.R. England, Inc. Data Breach Litig.,*
    2024 WL 1157398 (D. Utah. March 18, 2024)........................................... 8

*Keil v. Lopez,*
    862 F.3d 685 (8th Cir. 2017)..................................................................... 8

*McFadden, et al. v. Sprint, et al.,*
    No. 22-2464-DDC-GEB, 2024 WL 3890182 (D. Kan. Aug. 21, 2024) ................ 13

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
    314 F.3d 1180 (10th Cir. 2002) .......................................................... 9, 14

*Sullivan v. DB Invs., Inc.,*
    667 F.3d 273 (3d Cir. 2011) ..................................................................... 8

**Rules**

Fed. R. Civ. P. 23.................................................................................... *passim*

## INTRODUCTION

Plaintiffs respectfully request that this Court grant final approval of the proposed class settlement in this matter, which arises from the March 2023 data breach involving Defendant UnitedLex Corp. ("ULX" or "Defendant"). On July 23, 2024, this Court granted Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement under Rule 23(e), finding that the Settlement was likely to be approved as fair, reasonable, and adequate, and that the proposed Settlement Class was likely to meet certification requirements for purposes of judgment. *See* ECF No. 23. In accordance with the Court's Order, the appointed Settlement Administrator, KCC Class Action Services, LLC ("KCC"),[1] commenced the notice program on August 13, 2024. *See* Declaration of Omar Silva ("KCC Decl.") at ¶¶ 6-7. The notice program effectively reached approximately 84.5% of the Settlement Class. *See id.*, at ¶ 9. In response, 523 verified Settlement Class Members (representing 6.75%) submitted valid and timely claims. *See id.,* at ¶ 14. Significantly, there were zero objections to the Settlement, and only three Settlement Class Members opted out. *See id.,* at ¶ 16.

This overwhelmingly favorable response reflects the Settlement Class's strong support for the Settlement. Accordingly, Plaintiffs request that the Court: (1) grant final approval of the Settlement as fair, reasonable, and adequate under Rule 23(e)(2); (2) certify the Settlement Class for purposes of judgement on the proposal; (3) grant Plaintiffs' Unopposed Motion for an Award of Attorneys' Fees, Expenses, and Service Awards; and (4) enter final judgment after the Final Approval Hearing.

---

[1] Since filing the preliminary motion, KCC has changed names to Verita. For continuity purposes Counsel will continue to refer to KCC.

## SUMMARY OF THE LITIGATION

### I.   BACKGROUND

In March 2023, ULX suffered a cyberattack whereby a third-party, criminal actor gained illegal access to files on ULX's server, resulting in unauthorized access to personally identifiable information. *See* ECF No. 1-2, ¶¶ 28-36. Upon learning of the Data Breach, counsel spent significant hours interviewing affected class members, reviewing relevant documents and investigating and researching potential claims. *See* EFC No. 25-1 ¶ 3. Because there was very little public information about the Data Breach, the conversations with victims and the documents reviewed helped Class Counsel determine facts, claims, and guided research for the Complaint. *See id.*, ¶ 4. After several lawsuits were filed in various jurisdictions, counsel in the cases were able to work cooperatively to file a single lawsuit in this District on behalf of five plaintiffs. *See id.*, ¶ 5. While the parties discussed the prospect of an early resolution, Class Counsel maintained that a stay of proceedings would not be appropriate unless ULX agreed to provide extensive discovery detailing the specifics of the Data Breach, including documents and information sufficient to determine the size and scope of the Data Breach, relevant investigative reports, and categories of individuals impacted by the Data Breach, among other information. *See id.*, ¶ 6.

The parties ultimately reached an agreement on this discovery and thereafter requested a joint stay of proceedings pending mediation before the Honorable Diane M. Welsh (Ret.). See ECF No. 11, ¶¶ 4-6. On March 26, 2024, the Parties participated in an all-day mediation before Judge Welsh and were able to execute a binding term sheet setting forth the essential terms of settlement. *See* ECF No. 25-1, ¶ 7. Class Counsel thereafter spent multiple weeks negotiating terms of the Settlement Agreement, evaluating bids from Settlement Administrators, and preparing the Class Notice and Claim Form. *See id.* ¶ 8.

## SUMMARY OF PROPOSED SETTLEMENT AGREEMENT

The terms of the Parties' proposed Settlement Agreement are as follows:

## I.   THE SETTLEMENT CLASS AND BENEFITS

The Court provisionally certified, for purposes of settlement only, the following Settlement Class: "all U.S. residents whose PII was compromised as a result of the Data Breach. Excluded from the Settlement Class is ULX, its representatives and any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff." *See* Agreement, ECF No. 21-1, ¶ 45; ECF No. 23, ¶¶ 2-3. Under the terms of the Settlement, ULX has funded a non-reversionary cash settlement fund in the amount of $1,300,000. ECF No. 21-1, ¶¶ 45, 65-66. The Settlement Fund will be used to pay for the following benefits to the Settlement Class:

### A.   Reimbursement of Out-of-Pocket Expenses

The first component of the Settlement is reimbursement of out-of-pocket expenses and unreimbursed charges fairly traceable to the Data Breach up to $15,000 per individual ("Out-of-Pocket Expenses"). *See* ECF 21-1 ¶ 71.

- Out-of-pocket costs, expenses, losses, or other charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of a Settlement Class Member's PII;

- Out-of-pocket costs incurred after the Data Breach was disclosed associated with changing accounts or engaging in other mitigative conduct, such costs may include notary, fax, postage, copying, mileage, and long-distance telephone charges;

- Out-of-pocket professional fees incurred to address the Data Breach; and

- Out-of-pocket purchases of credit monitoring or other mitigative services after the Data Breach was disclosed, through the date of the Settlement Class Member's Claim submission.

Thus, as part of the claims process, all Settlement Class Members have had the opportunity to recover any out-of-pocket losses they incurred that were fairly traceable to the Data Breach.

**B.    Reimbursement for Lost Time**

The second component of the Settlement is reimbursement for time spent addressing issues related to the Data Breach for up to twenty (20) hours at twenty-five dollars ($25) per hour, totaling $500.00 per individual ("Lost Time"). Settlement Class Members can receive reimbursement for Lost Time by including on the claim form a brief description of the actions taken in response to the Data Breach and the time associated with each action. *See* ECF 21-1, ¶ 73. This is an important benefit as it permits Settlement Class Members to receive compensation for their valuable time and effort spent dealing with the Data Breach.

**C.    *Pro Rata* Payments**

To ensure that the entire Settlement Fund directly benefits Settlement Class Members, any remaining funds—after payments for Out-of-Pocket Expenses, Lost Time, Notice and Administration Expenses, Attorneys' Fees, and Service Awards—will be distributed *pro rata* among Settlement Class Members who elected this option. The Notice and Claim Form explicitly informed Settlement Class Members that additional cash payments were not guaranteed and that the amounts, if any, would depend on the number of valid claims submitted. ECF No. 21-1, ¶ 75; ECF No. 21-2, ¶ 11. Based on the preliminary claims data, Settlement Class Members who selected this benefit will receive meaningful cash payments.

**D.    Credit Monitoring and Identity Restoration Services**

Separate and apart from the Settlement Fund, ULX will pay for Credit Monitoring and Identity Restoration Services which will be offered to all Settlement Class Members who elect to enroll through July 11, 2027. ECF No. 21-1, ¶ 77; ECF No. 21-2, ¶ 12. The Credit Monitoring and Identity Restoration Services will be offered through Kroll and include single-bureau credit monitoring, unlimited access to consultation with fraud resolution specialists, and access to identity theft resolution services whereby individuals can access a licensed investigator to assist

with addressing identity theft issues. The Credit Monitoring and Identity Restoration Services are available to all class members regardless of whether they submit a claim for Out-of-Pocket Losses or Lost Time. ECF No. 21-1, ¶ 77; ECF No. 21-2, ¶ 12.

### E.    Contractual Business Practice Commitments

In addition to the monetary compensation provided to class members by the Settlement, and separate from the Settlement fund, ULX has agreed to implement and maintain certain business practice commitments relating to its information security program from the effective date of Settlement through July 11, 2027, including providing proof of relevant security certifications, which are subject to Court enforcement. ECF No. 21-1, ¶¶ 88-90; ECF No. 21-2, ¶ 13. These include continuing an enhanced cybersecurity training and awareness program, enhanced data security policies, enhanced security measures, such as implementation of network and application upgrades consistent with industry standards, further restricting personnel with access to sensitive information, and enhanced monitoring and response capability. ECF No. 21-1, ¶¶ 88-90; ECF No. 21-2, ¶ 13.

### F.    Service Awards and Attorneys' Fees, Costs, and Expenses

In accordance with the Settlement Agreement, Class Counsel moved for an attorneys' fee award of one-third of the settlement fund totaling $433,333.00, reimbursement of costs and expenses of $28,755.17 and for service award payment for three Settlement Class Representatives. *See* ECF No. 24; ECF No. 21-1, ¶ 110.

### G.    Release of Claims

In exchange for the benefits provided under the Settlement, Class Members will release any legal claims that may arise from or relate to the facts and claims alleged in the Complaint filed in this litigation, as specified in Section XIII of the Settlement Agreement. ECF No. 21-1, ¶¶ 105-107; ECF No. 21-2, ¶ 18.

## II.    PRELIMINARY APPROVAL AND ADMINISTRATION OF NOTICE

On June 24, 2024, Class Counsel filed an Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement Pursuant to Rule 23(e). *See* ECF No. 21. The motion was granted on July 23, 2024, wherein the Court concluded it would likely approve the Settlement as fair, reasonable, and adequate and certify the Settlement Class for purposes of judgment on the proposal, and thus directed notice be issued to the Class. ECF No. 23, ¶¶ 5-7.

In accordance with the Court's order, the Parties and KCC commenced the approved notice program and claims process, as set forth in the Settlement Agreement.[2] ULX provided KCC with a data file of Class Member data that included names and contact information. After de-duping and scrubbing the data, the final class list contained 7,755 unique records of Class Members. *See* Declaration of Omar Silva ("KCC Decl.") at ¶ 5.

On August 13, 2024, KCC mailed notice to 7,747 Class Members with valid mailing addresses and sent email notice to 6,013 Class Members with valid email addresses. *See id.*, ¶¶ 6-7. The e-mail notice was successfully delivered to 988 Class Members. *See id.*, ¶ 6. Of the mailed notices, a total of 1,300 were returned by USPS. 1,1221 of the returned packets lacked a forwarding address. Of this group that lacked forwarding addresses, 81 Class Members had a valid email address and received Notice via email. 79 Notices Packets had forwarding addresses and KCC promptly re-mailed the 79 Notice Packets to the updated addresses. *See id.*, at ¶¶ 7-8. Based on the combined delivery of Notice via mail and email, KCC estimates Notice reached 84.5% of Class Members. *Id.*, ¶ 9.

---

[2] As part of the bid for Preliminary Approval, KCC estimated cost of notice and administration would not exceed $61,000. Due to fraudulent claims and additional mailings administrative costs increased to $78,000. *See* KCC Decl. ¶ 17. Based on the number of valid claims, Class Counsel believe there are sufficient funds to accommodate this increase.

On or about August 10, 2024, KCC launched the settlement website at www.ulxsettlement.com, containing an online claim form module, frequently asked questions, information on how to contact the Claims Administrator, and downloadable versions of the Claim Form, Notice, Preliminary Approval Order, and Settlement Agreement. *See id.*, ¶ 10. As of November 19, 20 24, there have been 182,967 visitors to the website. *Id.* On or about August 10, 2024, KCC established a toll-free telephone line. *See id.*, at ¶ 11. As of November 19, 2024, KCC has received a total of 27 calls which were handled by a live operator *See id.*, at ¶ 10.

## III.   THE REACTION OF THE CLASS HAS BEEN FAVORABLE

Settlement Class Members' response to the Settlement has been overwhelmingly positive. The deadline to submit a claim was November 12, 2024, and KCC received 523 valid and timely claim forms representing 6.75% of the Settlement Class, including:

- 282 claims for lost time,

- 434 claims for credit monitoring,

- 345 claims for a *pro rata* share, and

- 39 claims for out-of-packet reimbursement. *See id.*, ¶12-14.

KCC is currently conducting a review and audit of all claims made, which may impact the final totals. The Opt-Out and Objection Deadline was September 23, 2024, and no Settlement Class Members objected and only three class members opted out of the Settlement. *See id.*, ¶¶15-16.

By any measure, a 6.75% verified claims rate is successful. As noted by many courts, "[t]he reality is the number of class members who actually file claims [in class action settlements] is relatively low. The prevailing rule of thumb with respect to consumer class actions is a claims rate of 3-5 percent." *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) (internal marks omitted) (quoting *Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *4 (N.D. Cal.

Apr. 6, 2012)). Indeed, "a claim rate as low as 3 percent is hardly unusual in consumer class actions." *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) (collecting cases); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (claims rates in consumer class action settlements "rarely" exceed 7%, "even with the most extensive notice campaigns").

The verified claims rate here is not only on the upper-echelon for consumer class actions— it is particularly high in the context of data breach cases, which typically involve relatively low dollar claims. *See e.g.*, *In re Wawa, Inc. Data Sec. Litig.*, 2024 WL 1557366, at *17 (E.D. Pa. Apr. 9, 2024) (approving settlement with 2.56% claims rate in a data breach class action); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding 1.8% claims rate reflects positive reaction by class); *Beasley v. TTEC Service Corp.*, 2024 WL 170411, at *5 (D. Colo. Feb. 21, 2024) (claims rate in data breach case was 3.9% which indicated to the Court the relief was adequate and that class members support the settlement); *In Re: C.R. England, Inc. Data Breach Litig.*, 2024 WL 1157398, at *3 (D. Utah. March 18, 2024) (finding the roughly 3.6% claims rate in a data breach case supports a finding that the notice program was sufficient).

As noted above, not one class member lodged an objection, either to the substance of the Settlement or Plaintiffs' motion for attorneys' fees, costs, and service awards, and only three Class Members requested exclusion from the Settlement. This overwhelmingly positive reaction from the Class supports the fairness and adequacy of the Settlement.

## IV.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLMENT

The Court may approve a settlement by finding that the settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23 (e)(2). The Rule includes several factors that courts should consider when deciding whether the settlement is "fair, reasonable, and adequate[.]" These factors include whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    i.    the costs, risks, and delay of trial and appeal;

    ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.    the terms of any proposed award of attorney's fees, including timing of payment; and

    iv.    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Additionally, the Tenth Circuit has instructed courts to analyze the following four factors when deciding whether a Rule 23 agreement is fair, reasonable, and adequate:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1188 (10th Cir. 2002).

Because the Tenth Circuit's factors "largely overlap" with the Rule 23(e)(2) factors, "with only the fourth factor not being subsumed" into Rule 23, courts in this district now "consider[] the Rule 23(e)(2) factors as the main tool in evaluating the propriety of [a] settlement," while still addressing the Tenth Circuit's factors. *Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).

The Court's initial disposition was correct, as the Settlement satisfies each of the Rule 23(e)(2) and Tenth Circuit factors. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

**A.    The Class Representative and Class Counsel Have Provided Excellent Representation to the Class.**

Courts consider a class to be adequately represented where the representative plaintiffs' interests do not conflict with the interests of the other class members they seek to represent, and their counsel prosecutes the case vigorously. *In re Motor Fuel Temperature Sales Pracs. Litig.*, 271 F.R.D. 221, 231 (D. Kan. 2010). Here, Plaintiffs share the same interests and suffered the same types of alleged injuries as the absent Class members. First, the interests of the Settlement Class Representatives are aligned with those of other Settlement Class Members, as they all allege that they suffered and seek to redress the same injury: theft of their personal data in the Data Breach. *See Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 625–26 (1997) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (cleaned up).

Further, Class Counsel are highly experienced in complex class actions and data breach litigation in particular, having been appointed as lead or co-lead counsel in many of the largest data breach cases in history. *See* ECF No. 21-2, ¶ 21. This knowledge and experience enabled Class Counsel to efficiently prosecute the case and negotiate a well-informed settlement.

**B.    The Settlement was Negotiated at Arm's Length**

Another element of procedural fairness, as required by Rule 23(e)(2)(B), is "the proposal was negotiated at arm's length." As the Court already recognized, the Settlement was "the result of arm's-length negotiations under the guidance of Hon. Diane M. Welsh (Ret.)." ECF No. 23, ¶ 6.  Accordingly, the nature of the Parties' negotiations leading to the proposed Settlement weighs in favor of approval.

**C.**    **The Relief Provided for the Class is Fair, Reasonable, and Adequate**

**1.**    **The costs, risks, and delay of trial and appeal;**

Balancing the risks of continued litigation, the benefits of the Settlement, and the immediacy and certainty of the significant recovery provided for by the Settlement supports that the Settlement should be approved. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2021 WL 5369798, at *2 (D. Kan. Nov. 17, 2021) (quoting *In re Syngenta AG MIR 162 Corn. Litig.*, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018) (recognizing that the "immediate recovery is more valuable than 'the mere possibility' that Class Members might achieve a more favorable outcome 'after protracted and expensive litigation' that may well last 'many years in the future'")).

As recognized by this Court in granting preliminary approval, the Settlement has "greater value to the Class than the possibility of relief after protracted litigation, especially given the complex, risky, and unsettled nature of data breach litigation." ECF No. 23, ¶ 6.

Through the Settlement, Plaintiffs and Class members gain significant benefits without having to face further risk. A relatively early settlement is especially warranted in the data breach context because class members benefit *immediately* from protections like credit monitoring and identity restoration services that can help detect and prevent identity theft and fraud early and assist class members in addressing any issues that arise. At trial, there is a possibility that only class members who already experienced damages in the form of monetary losses would be able to recover. By contrast, this Settlement provides benefits to the *entire* class, including reimbursement for lost time, additional cash payments, credit monitoring, and business practice commitments that might not otherwise be available remedies at trial.

### 2.    The effectiveness of any proposed method of distributing relief to the class

Rule 23(e)(2)(C)(ii) requires a court to consider "the effectiveness" of the "proposed method of distributing relief to the class, including the method of processing class-member claims." The claims processing method "should deter or defeat unjustified claims" without being "unduly demanding." Advisory Committee Note to 2018 Amendment to Fed. Civ. P. 23. As noted above, notice was successfully delivered to 84.5% of the Settlement Class and the claims process was simple and effective, resulting in hundreds of claim submissions. The effectiveness of the Notice, and the overwhelmingly positive response to the Settlement to date, confirm the Court's preliminary assessment that under the circumstances the process was practicable, reasonably calculated, and otherwise fair and reasonable. ECF No. 23, ¶ 8.

### 3.    The terms of the proposed award of attorneys' fees, expenses and service awards

Rule 23(e)(2)(C)(iii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment." The terms of the proposed attorneys' fee award are consistent with class action best practices. The amount of any attorneys' fee award is intended to be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. ECF No, 21-1, ¶ 110. The Settlement is not contingent on the amount of any fee award. The Settlement provides that Class Counsel intends to seek an attorneys' fee award of up one-third of the $1,300,000 settlement and costs and expenses not to exceed $30,000. *Id.* The Notice advised Settlement Class Members of these amounts. *See* KCC Decl. ¶ 10.

On August 30, 2024, Plaintiffs filed their unopposed motion seeking attorneys' fees of $433,333.00, and costs and expenses of $28,755.17. *See* ECF No. 24. As explained in the memorandum in support of the motion, Class Counsel have dedicated 841.7 hours to the litigation, resulting in a total lodestar of $660,538.10, thus resulting in a negative lodestar multiplier. ECF

No. 25; EFC No. 25-1, ¶ 12. This fact along with the full analysis of the *Johnson* factors supports the reasonableness of Class Counsel's requested fees in this action.

Per the terms of the Settlement Agreement, Plaintiffs also moved the Court for a service award for Mr. Behrendt in the amount of $2,500 for his 33 hours of work, Mr. Krant in the amount of $1,360 for his 13.6 hours of work, and Ms. Miller in the amount of $780 for her 7.8 hours of work.[3] Class Counsel submit these awards are fair and reasonable and should be approved.

### 4.    The Settling Parties Have No Additional Agreement

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreement. The settling parties have no additional agreements. ECF No. 21-1 at ¶ 115.

### D.    The Settlement Treats Class Members Equitably Relative to Each Other

The proposed Agreement treats all Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members had the same opportunity to seek reimbursement for Out-of-Pocket Expenses and Lost Time, which means that monetary compensation will be apportioned in accordance with each Settlement Class Member's Claim. Additionally, all Settlement Class Members were eligible for additional cash payments to be split *pro rata*, regardless of what other relief they seek under the Settlement. ECF No. 21-2 at ¶ 11. Because all Settlement Class Members are treated alike, this requirement is satisfied.

### E.    The Settlement Satisfies the Remaining Tenth Circuit Factor

The final, additional factor courts in the Tenth Circuit consider in evaluating a settlement for final approval is "the judgment of the parties that the settlement is fair and reasonable."

---

[3] For Mr. Behrendt, a $2,500 award, the maximum allowable under the Settlement Agreement, amounts to $75.76 per hour. The awards sought by Mr. Krant and Ms. Miller amount to $100 per hour, which equals the rate most recently approved by this Court. *See McFadden*, 2024 WL 3890182, at *8.

*Rodriguez*, 2020 WL 3288059 at *2. As this Court has already found, the judgment of the Settling Parties is "fair and reasonable." *See* ECF No. 23, ¶ 6.

Class Counsel have compared the recovery that the Class will receive from the Settlement against the delays, risks, and uncertainties of continued litigation. In analyzing the comparison, Plaintiffs and Counsel believe the Settlement is fair, adequate, and reasonable and should be approved. *See Rutter*, 314 F.3d at 1188 (that settling parties ask the court to approve the settlement suggests that "the judgment of the parties" is "that the settlement is fair and reasonable.").

## V.    CLASS CERTIFICATION REMAINS APPROPRIATE

In its Preliminary Approval Order, the Court provisionally certified the Settlement Class for settlement purposes, finding that the class met each of the Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy and that the class met each of Rule 23(b)(3)'s requirements of predominance and superiority. *See* ECF No. 23 at ¶2

Nothing has changed since the Court's ruling that would call into question the Court's conclusions regarding certification. The Settlement Class is numerous, with more than 7,500 individuals. There are common issues regarding the Data Breach and ULX's liability that predominate over individual issues. Class-wide resolution is superior because it is the only practical means through which the thousands of Class Members may obtain relief. The Settlement Class Representatives' claims are typical of the claims of Class Members, including because they allege the same injuries and harms. Further, Plaintiffs adequately performed their duties as settlement class representatives and do not possess conflicts of interests with the Class Members. *See id.* Finally, Class Counsel have extensive experience in data breach and class action litigation, have adequately represented the Settlement Class to date, and are well qualified to represent the Settlement Class. Accordingly, final certification of the Settlement Class is appropriate.

## VI.    THE COURT SHOULD DESIGNATE CLASS COUNSEL

The Court appointed Norman E. Siegel and J. Austin Moore of Stueve Siegel Hanson LLP, Bryce Bell of Bell Law, LLC, Tyler W. Hudson of Wagstaff & Cartmell, LLP, Manuel S. Hiraldo of Hiraldo P.A., and Rachel Dapeer of Dapeer Law, P.A. as interim class counsel pursuant to Rule 23(g)(3) to act on behalf of the Settlement Class Representatives and the Settlement Class pending final approval of the Settlement. ECF No. 23, ¶ 4. Upon the Court's certification of the Settlement Class for purposes of entry of judgment on the Settlement, Plaintiffs request that these counsel be appointed Class Counsel of the Settlement under Rule 23(g)(1).

## **CONCLUSION**

For the foregoing reasons and in the supporting declaration, Plaintiffs respectfully request the Court grant Plaintiffs' Motion for Final Approval of Settlement, and Award Attorneys' Fees, Expenses, and Service Awards.

Dated: November 26, 2024                    Respectfully submitted,

/s/ *J. Austin Moore*
Norman E. Siegel (D. Kan. No. 70354)
J. Austin Moore (D. Kan. No. 78557)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101
siegel@stuevesiegel.com
moore@stuevesiegel.com

Bryce B. Bell  KS# 20866
**BELL LAW, LLC**
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
Tel: 816-886-8206
Bryce@BellLawKC.com

Tyler W. Hudson KS# 20293
**WAGSTAFF & CARTMELL**

4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: 816-701-1100
Fax: 816-531-2372
thudson@wcllp.com

Manuel S. Hiraldo (*pro hac vice*)
**HIRALDO P.A.**
401 E. Las Olas Blvd., Ste. 1400
Fort Lauderdale, FL 33301
Tel: 954-400-4713
mhiraldo@hiraldolaw.com

Rachel Dapeer (*pro hac vice*)
**DAPEER LAW P.A.**
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Tel: 954-799-5914
rachel@dapeer.com

*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2024, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

By:     /s/ *J. Austin Moore*
        *Counsel for Plaintiffs and the Class*